IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

CHALANE MARIE DOWNS                                                                           PLAINTIFF

           v.                    Civil No. 3:12-CV-3127-JRM

CAROLYN W. COLVIN,[1] Commissioner
Social Security Administration                                                                DEFENDANT

MEMORANDUM OPINION

Plaintiff, Chalane Marie Downs, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying her claim for a period of disability, disability insurance benefits ("DIB"), supplemental security income ("SSI") under Titles II and XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I.     Procedural Background:**

Plaintiff filed an application for DIB on June 1, 2010 and for SSI on June 16, 2010. (Tr. 126-27, 128-36.) She alleged an onset date of disability of July 6, 2001 due to anxiety and fibromyalgia. (Tr. 126, 128, 72.) Plaintiff's applications were denied initially and on reconsideration. (Tr. 72, 83.) In her appeal disability report, Plaintiff alleged loss of use of right arm with pain, pain in legs, back, knees and ankles, high blood pressure, chronic obstructive pulmonary disease ("COPD"), and depression, with an onset date of October 5, 2010. (Tr. 210-11.) Plaintiff then requested a hearing, which was held on May 26, 2011. (Tr. 44.) Plaintiff was present to testify and represented telephonically by her attorney, Sara Baybidder. Vocational expert Sara Moore was also present. (Tr. 44.) At the hearing, Plaintiff amended

---

[1]Carolyn W. Colvin became the Social Security Commissioner on February 14, 2013. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Carolyn W. Colvin has been subsituted for Commissioner Michael J. Astrue as the dedendant in this suit.

her onset date to June 1, 2010. (Tr. 64.) Since the hearing, Plaintiff has been represented by attorney Jeremy McNabb. (Tr. 94.) and attorney Mima Cazort. (Tr. 10.) Ms. Cazort is the attorney of record before this Court.

At the time of the administrative hearing, Plaintiff was 51 years of age and possessed an eighth grade education. (Tr. 221.) The Plaintiff had past relevant work experience ("PRW") of poultry line worker and box packer, buffet restaurant cook/dishwasher/waitress, convenience store worker, and laundry worker at a nursing home. (Tr. 170-79.)

On June 17, 2011, the Administrative Law Judge ("ALJ") concluded that, although severe, Plaintiffs generalized pain due to fibromyalgia did not meet or equal any Appendix 1 listing. (Tr. 21-22.) The ALJ found Plaintiff's "mental impairments of panic disorder without agoraphobia and major depression, both individually and in combination, to cause no more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere." (Tr. 23.) The ALJ found no severe impairment due to COPD or hypertension. (Tr. 22.) The ALJ found that the Plaintiff maintained the residual functional capacity ("RFC") to perform the full range of light work as defined in 20 C.F.R. 404.1527 and 416.967(b). (Tr. 24.) With the assistance of the vocational expert ("VE"), the ALJ then determined Plaintiff could perform past relevant work as a buffet waitress. (Tr. 26.)

Plaintiff requested a review by the Appeals Council ("AC") on August 11, 2011. (Tr. 14-15.) On September 4, 2012, the AC denied the request for review. (Tr. 4.) On August 27, 2012, Plaintiff submitted medical records from Plaintiff's treating physician for "6/28-7/1/2012" to the Appeals Council. (Tr. 10.) The Appeals Council noted the receipt of the information on September 13th, 2012, where it was identified as a medical source statement (physical) completed by Craig Milam, M.D., on July 19, 2011. (Tr. 8.) On September 17, 2012, the Appeals Council declined to consider the additional evidence. (Tr. 1.)

**II.     Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Id*. "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Id.* As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). If the court finds it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, the court must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or

3

combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

### III. Discussion:

Plaintiff argues that the ALJ erred when he: 1) incorrectly relied on a non-examining consultant's medical opinion over that of Plaintiff's treating physician and of an examining medical consultant; 2 ) found that Plaintiff could perform light work while returning her to past work performed at the medium exertional level; 3) committed several *Chenery* violations; and 4) failed to fully develop the record. (Pl.'s Br. 2.)

### A.  ALJ Evaluation of Medical Opinion Evidence

"It is the ALJ's function to resolve conflicts among 'the various treating and examining physicians.'"*Bentley v. Shalala*, 52 F.3d 784, 785 (8th Cir. 1995). "[A] treating physician's opinion will be granted 'controlling weight,' provided it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record.'" *Prosch v. Apfel*, 201 F.3d 1010, 1012-13 (8th Cir. 2000)(citing 20 C.F.R. § 404.1527(d)(2)). However, if the treating physician's opinion is conclusory or inconsistent with the medical records, the ALJ is free to discount it in favor of one from a consulting physician. *Metz v. Shalala*, 49 F.3d 374, 377 (8th Cir. 1995). In evaluating consultative medical opinions, the regulations require the ALJ to give more weight to the opinion of an examining medical source than a non-examining source. *Wildman v. Astrue, 596 F.3d 959* (8th Cir. 2010) (citing 20 C.F.R. 416.927(c)(1)).

4

Plaintiff makes several allegations of error concerning the ALJ's evaluation of the medical opinion evidence. First, she argues that the ALJ "did not mention [treating physician] Dr. Milam." (Pl.'s Br. 13.) Second, she argues that the ALJ chose to rely on the opinions of non-examining doctors hired by the Agency over that of her treating physician Dr. Milam and consultative examiners Dr. Maris and Dr. Sonntag. (Pl.'s Br 13.) Third, she argues that the ALJ failed to address the physical RFC submitted by Dr. Milam. (Pl.'s Br. 14.)

Plaintiff's argument that the ALJ "did not mention Dr. Milam" is without support in the record. Indeed, the ALJ expressly referenced Dr. Milam's findings regarding Plaintiff's hypertension, COPD, pain, anxiety, and depression. (Tr. 22-23.)

Plaintiff's argument that the ALJ chose to rely on the opinions of non-treating doctors over treating and/or examining physicians is also without support in the record. Plaintiff appears to base this argument primarily on the statement of the ALJ that "[a]s for the opinion evidence, the undersigned concurs with the state agency physicians' assessments regarding the claimant's residual functional capacity except as it relates to their findings of limitations to COPD." (Pl.'s Br. 13.) However, the ALJ specifically referenced treating physician Dr. Milam's medical records to refute Dr. Maris's August 13, 2010 findings of probable COPD. (Tr. 22.) A close examination of Dr. Milam's medical notes clearly state "lungs clear" in June 2006, June 2007, December 2009, May 2010, and December 2010. (Tr. 271, 279, 284, 298.) The ALJ properly gave the highest weight to the treating physician's longitudinal findings concerning COPD.

Plaintiff also states that both Dr. Maris and Dr. Milam found the Plaintiff to be disabled. This statement is incorrect. This may be due to an apparent clerical error on the part of the ALJ, who stated that Dr. Maris found Plaintiff to be "disabled," and citing Exhibit 14F. (Tr. 25.) However, Exhibit 14F is a document from Dr. Milam stating that Plaintiff is disabled. Dr. Maris found that she had moderate to severe limitations due to the fibromyalgia, which the ALJ correctly noted as from Ex. 3F. (Tr. 24.)

5

Furthermore, the ALJ correctly noted that the ultimate decision concerning disability for Agency purposes is reserved for the Commissioner. (Tr. 25) *See Cox v. Barnhart,* 345 F.3d 606, 608 (8th Cir. 2003) ("It is the ALJ's job to reach a decision as to the claimant's legal disability by evaluating the objective medical evidence before him.")

Plaintiff is correct in noting that the ALJ did not take Dr. Milam's RFC into consideration in his opinion. There is considerable confusion in the record as to when this RFC was actually submitted to the Agency. The Milam RFC form was signed July 19, 2011. (Tr. 302.) This date is approximately two months after the ALJ hearing in May 2011 and one month after the ALJ opinion was submitted on June 16, 2011. It is mail-stamped as received by the ODAR on August 11, 2011. (Tr. 303.) However, the Appeals Council references the same information as being received on September 4, 2012, where it was identified as a medical source statement (physical) completed by Craig. Milam, M.D., on July 19, 2011. (Tr. 8.) This submission was labeled by Plaintiff's counsel as "Medical Records from Dr. Milam for 6/28 and 7/1/2012." (Tr. 10.) This was after the Appeals Council had acted on Plaintiff's Appeal. (Tr. 3.) The Appeals Council declined to consider the additional evidence because the ALJ "decided your case through June 17, 2011. Additional evidence from Craig Milam, M.D., dating from June 28, 2012 to July 1, 2012 is about a later time. Therefore it does not affect the decision about whether the claimant was disabled on or before June 17, 2011." (Tr. 1.)

It is certainly the case that "[t]he Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the ALJ hearing decision." (internal quotation and alteration omitted). *Perks v. Astrue*, 687 F.3d 1086, 1093 (8th Cir. 2012) (citing 20 C.F.R. §404.970) However, "[r]eviewing courts have the authority to order the Commissioner to consider additional evidence but "only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g); *Woolf v. Shalala*, 3 F.3d 1210 (8th Cir. 1993); *Chandler v. Secretary of Health and Human*

*Servs.,* 722 F.2d 369, 371 (8th Cir. 1983). "To be material, new evidence must be non-cumulative, relevant, and probative of the claimant's condition for the time period for which benefits were denied, and there must be a reasonable likelihood that it would have changed the Commissioner's determination." *Woolf,* 3 F.3d at 1215.

The undersigned recognizes that the ALJ could not have considered the Milam RFC. However, given that there was confusion in the record, that the RFC form itself was signed only one month after the ALJ's decision*,* and that it provides more clarity on the Plaintiff''s alleged fibromyalgia limitations, it seems clear that it relates to the period of the ALJ's decision. Further, the additional clarity concerning the Plaintiff's fibromyalgia-related limitations has direct bearing on the ALJ's final RFC.

The ALJ therefore is directed to include Dr. Milam's RFC dated July 19, 2011 as part of the accepted Agency record in further proceedings.

**B.     PRW Analysis**

Plaintiff argues that the ALJ erred when he assigned Plaintiff an RFC of unlimited light work but then found that she could return to a buffet waitress job that, as previously performed, had been done at the medium exertional level. (Pl.'s Br. 14.)

An ALJ may classify a claimant's PRW based on the functional demands of either the claimant's actual past work or how the occupation is generally performed in the national economy. *Evans v. Shalala*, 21 F.3d 832, 833 (8th Cir. 1994) (citing SSR 82-61). In determining how a job is performed in the national economy, the ALJ may reference the Dictionary of Occupational Titles ("DOT"). *Id.* at 834. The DOT descriptions "can be relied upon -- for jobs that are listed in the DOT -- to define the job as it is usually performed in the national economy. SSR 82-61.

Plaintiff testified at the hearing that she worked at a family buffet restaurant for four years. She would serve breakfast and lunch from 7:00am to 2:00pm five days per week. (Tr. 49.) In addition to working the serving line she testified that she "did everything that needed to be done in that restaurant."

This included cooking, prepping food, and washing dishes. (Tr. 52.) The VE testified that the DOT title of waitress, buffet (311.674-018) is classified as light work, semi-skilled, but agreed that as performed in her past position it was performed at the medium exertion level. (Tr. 51.) She also testified that the job of cook is medium, skilled work (313.381-030). (Tr. 52.) The ALJ specifically noted these points concerning Plaintiff's PRW as actually performed, and found that she could perform the job of buffet waitress "as generally performed." (Tr. 27.)

The ALJ properly considered the Plaintiff's PRW, both as actually performed and as generally performed according to the DOT.

C.   *Chenery* **Doctrine**

Both Plaintiff and Defendant raised arguments about the *Chenery* doctrine. The *Chenery* doctrine arises from *Securities and Exchange Commission v. Chenery Corp*, 332 U.S. 194 (1947). The *Chenery* court stated that, in reviewing an agency decision, a reviewing court is limited to examining agency action "solely on the grounds invoked by the agency." *Id.* at 196. In the Eighth Circuit, this has been interpreted to stand for the premise that " a reviewing court may not uphold an agency decision based on reasons not articulated by the agency itself in its decision." *HealthEast Bethesda Lutheran Hosp. & Rehab. Ctr. v. Shalala*, 164 F.3d 415, 418 (8th Cir. 1998) (quoting *Mayo v. Schiltgen*, 921 F.2d 177, 179 (8th Cir. 1990.) However, this ruling is limited to cases "in which an agency fails to make a necessary determination of fact or policy." *HealthEast*, 164 F.3d at 418 (citing *Arkansas AFL-CIO v. Federal Communications Commission*, 11 F.3d 1430, 1440 (8th Cir.1993) (en banc ).

Plaintiff argues that the ALJ committed "several Chenery violations about the facts." (Pl.'s Br. 11.) This is a misapplication of the doctrine. *Chenery* applies to a court reviewing an Agency decision - not the Agency itself as it makes its decision.

Defendant makes an interesting argument that the *Chenery* doctrine does not apply to Social Security cases because the court has the power to modify Social Security decisions on review - not just

affirm or remand them. (Def.'s Br. 5-6.) On its face, this is a reasonable and perhaps even compelling argument, and one that has not been directly addressed by the Eighth Circuit Court of Appeals. *But see Strom v. Astrue*, 2008 WL 583690 (D. Minn. 2008) (holding that *Chenery* does apply in Social Security cases.) However, the Sixth, Seventh, Ninth, and Tenth Circuits have applied *Chenery* to Social Security cases. *See e.g. Molina v. Bowen*, 800 F.2d 535 (9th Cir. 2012); *Lindsley v. Commissioner of Social Security*, 560 F.3d 601 (6th Cir. 2009); *Hackett v. Barnhart*, 475 F.3d 1166 (10th Cir, 2007); *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002). *See also* Carolyn A. Kubitschek & Jon C. Dubin*, Social Security Disability Law and Procedure in Federal Courts* §9:48 Applying erroneous legal standards (5th ed. 2013). Because it is not necessary to apply the doctrine in this case, the undersigned declines to make a decision on this argument at this time.

**D.     ALJ Development of Record**

Plaintiff argues that the ALJ did not fairly and fully develop the record. (Pl.'s Br. 12.) Specifically, Plaintiff alleges that the ALJ "left holes" in the record due to the use of "half true" statements. (Tr. 10-12.) Plaintiff further argues that the ALJ acknowledged that the Plaintiff had severe impairment due to fibromyalgia, yet then "did everything possible to ignore the findings of two medical doctors, one Plaintiff's treating physician and the other agencies' own consultative examining doctors." (Pl.'s Br at 10-12.) Finally, Plaintiff challenges the ALJ's finding that she had "a fairly active lifestyle" based on her daily activities. (Pl.'s Br. 12.)

The ALJ has a duty to fully and fairly develop the record.  *See Frankl v. Shalala*, 47 F.3d 935, 938 (8th Cir. 1995)(ALJ must fully and fairly develop the record so that a just determination of disability may be made). This duty exist "even if ... the claimant is represented by counsel." *Boyd v. Sullivan*, 960 F.2d 733, 736 (8th Cir.1992) *(quoting Warner v. Heckler*, 722 F.2d 428, 431 (8th Cir.1983)). However, the ALJ is not required to act as Plaintiff's counsel. *See Clark v.Shalala*, 28 F.3d 828, 830 (8th Cir. 1994) (ALJ not required to function as claimant's substitute counsel, but only to develop a reasonably

complete record); *see also Shannon v. Chater*, 54 F.3d 484, 488 (8th Cir. 1995) ("reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial"). There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis. *Battles v. Shalala*, 36 F.3d 43 at 45 (8th Cir. 1994). In determining whether an ALJ has fully and fairly developed the record, the proper inquiry is whether the record contained sufficient evidence for the ALJ to make an informed decision. *Haley v. Massanari*, 258 F.3d 742, 748 (8th Cir.2001).

### 1. ALJ Treatment of Medical Records

"Fibromyalgia is a common nonarticular disorder of unknown cause characterized by generalized aching (sometimes severe); widespread tenderness of muscles, areas around tendon insertions, and adjacent soft tissues; muscle stiffness; fatigue; and poor sleep. THE MERCK MANUAL, *Fibromyalgia*,http://www.merckmanuals.com/professional/musculoskeletal_and_connective_tissue_ disorders/bursa_muscle_and_tendon_disorders/fibromyalgia.html?qt=fibromyalgia&alt=sh (last accessed Nov. 15, 2013). "[F]ibromyalgia appears to be linked to changes in how the brain and spinal cord process pain signals and how the body handles stress signals." Mayo Foundation for Medical Education and Research, *Fibromyalgia*, http://www.mayoclinic.com/health/fibromyalgia-symptoms/AR00054 (last accessed Nov. 15, 2013.) "[A]ny fibromuscular tissues may be involved, especially those of the occiput, neck, shoulders, thorax, low back, and thighs. There is no specific histologic abnormality. Symptoms and signs are generalized, in contrast to localized soft-tissue pain and tenderness." MERCK, *supra*. Clinical criteria originally required a finding of tenderness at eleven or more of eighteen specific tender points, and "many family doctors were uncertain about how much pressure to apply during a tender point exam." Mayo, *supra*. However, most experts no longer require a specific number of points. Rather, the newer diagnostic criteria include widespread pain, the presence of other symptoms such as fatigue, and the exclusion of other rheumatic or mental health problems. MERCK, *supra*; Mayo, *supra*.

Plaintiff appears to argue that a diagnosis of fibromyalgia should automatically result in a finding that she is disabled. However, "not every diagnosis of fibromyalgia warrants a finding that a claimant is disabled." *Perkins v. Astrue*, 648 F.3d 892, 900 (8th Cir. 2011). At the same time, "[f]ibromyalgia is an elusive diagnosis that is largely based on subjective complaints and cannot be confirmed by diagnostic testing." *Tilley v. Astrue*, 580 F.3d 675, 681 (8th Cir. 2009). Further, [f]ibromyalgia is a rheumatic disease and the relevant specialist is a rheumatologist.*" Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996).

The ALJ reviewed records from the treating physician, two consultative examining doctors (both physical and mental), and several Requests for Medical Advice (both mental and physical) from non-examining doctors. The records for treating physician Milam span longitudinally from July 2005 to May 2010. (Tr. 262-90.) As discussed above, the Milam RFC was not referenced, as it was signed by Dr. Milam about one month after the date of the ALJ hearing decision.

The Physical RFC assessment was completed by non-examining physician Dr. Davidson on August 16, 2010. (Tr. 240-45.) This RFC assessed a primary diagnosis of fibromyalgia, severe untreated, with probable COPD, also untreated. The physical RFC indicated that the Plaintiff could occasionally lift 20 pounds and frequently lift 10 pounds. She could stand or walk about 6 hours in an 8 hour workday, with unlimited push-pull. No other limitations noted other than avoidance of concentrated exposure to fumes, etc. due to COPD. (Tr. 240-45.) As discussed above, the COPD diagnosis was discounted by the ALJ as it did not comport with the longitudinal findings of treating physician Milam. Discounting the COPD, Dr. Milam first noted pain in the patient's records in June 2007, diagnosing arthritis. (Tr. 272.) He noted "right shoulder pain and tender points" in May 2010, and diagnosed "polymyalgia versus fibromyalgia." (Tr. 286.) Dr. Maris saw the Plaintiff in August 2010 and diagnosed severe fibomyalgia, untreated, and noted moderate to severe limitations in activities due to fibromyalgia. (Tr. 230.) He also noted GAD (Generalized Anxiety Disorder) and noted moderate to severe limitations for it as well. (Tr.

230.) Plaintiff testified that the Neurontin she was given for the fibromyalgia does not seem to help. (Tr. 54.)

Dr. Milam's July 2011 physical RFC indicated more significant physical limitations for the Plaintiff. It indicated a limit of ten pounds for both occasional and frequent lifting, that she cannot stand for more than fifteen minutes at a time, that she is unable to crouch/crawl/stoop/kneel/climb, that pushing-pulling, reaching, handling, fingering and feeling were limited, and that she should avoid extremes in temperature. (Tr. 299-302.)

The mental RFC was completed by Dr. Henderson, Ph.D, and was based on the findings of examining physician Dr. Sonntag. (Tr. 235-39.) The RFC indicated only moderate indications of limitations in some areas. (Tr. 238.) There were no marked limitations in any area. (Tr. 238.) RFC summary stated "[t]he claimant is able to perform work where interpersonal contact is incidental to work performed, e.g. assembly work; complexity of tasks is learned and performed by rote, few variables, little judgment; supervision required is simple, direct and concrete." (Tr. 239.) Dr. Sonntag diagnosed Plaintiff with Panic disorder without Agoraphobia and Major Depression, Recurrent, Moderate, GAF 55. (Tr. 223.) Dr. Sonntag noted that chronic pain interfering with sleep was a symptom of Major Depression. (Tr. 222.) In terms of adaptive functioning, Dr. Sonntag opined that she "demonstrated no difficulty with the capacity to cope with the typical mental and cognitive demands of the tasks given her on the evaluation; as to whether those tasks would transfer to work-like scenarios remains to be seen. It seems improbable that she would have any difficulty." (Tr. 223.) In terms of day to day adaptive functioning, Dr. Sonntag noted "Ms. Downs stated she could drive both familiar and unfamiliar routes. She can shop independently. She said she was able to handle her personal finances, participate in social groups, and was capable of performing ADLs autonomously." (Tr. 238.) Dr. Sonntag further opined that there were no indicators of exaggeration or malingering. (Tr. 239.) Her diagnosis is consistent with treating physician D. Milam, who noted chronic anxiety and at times depression throughout the Plaintiff's

treating medical records. (Tr. 262-90) Plaintiff testified at her hearing that Xanax[2] and Paxil[3] help take the edge off her anxiety. (Tr. 61.)

On June 17, 2011, the Administrative Law Judge "ALJ") concluded that, although severe, Plaintiff' generalized pain due to fibromyalgia did not meet or equal any Appendix 1 listing. (Tr. 21-22.) The ALJ found Plaintiff's "mental impairments of panic disorder without agoraphobia and major depression, both individually and in combination, to cause no more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere." (Tr. 23.)

In reviewing the ALJ's analysis of the medical records, the undersigned notes several points of concern which require remand. First, as discussed above, the ALJ should include Dr. Milam's July 2011 RFC in his review of the medical records. Second, because fibromyalgia is a rheumatic disease and there is some conflicting evidence in the medical records as to both the source and severity of Plaintiff''s chronic pain, the ALJ is directed to refer the Plaintiff to a rheumatologist for further evaluation in developing the final RFC. Finally, the Plaintiff is taking Xanax and Paxil for her anxiety/depression. Both of these drugs can produce drowsiness, lightheadedness, or dizziness which could require further limitations in the Plaintiff's RFC for her safety. The ALJ is therefore directed to include an analysis of medication side-effects in the final RFC.

**2.     ALJ's Analysis of Plaintiff's Activities of Daily Life ("ADL")**

---

[2]Xanax is a benzodiaepine drug indicated for management of anxiety disorders, including panic disorder, with or without agoraphobia. Side effects can include Drowsiness, lightheadedness, depression, headache, confusion, insomnia, dry mouth, constipation, diarrhea, N/V, tachycardia/palpitations, blurred vision, nasal congestion.
http://www.pdr.net/drug-summary/xanax?druglabelid=1873&id=1159 (last accessed Nov. 15, 2013.)

[3]Paxil is a serotonin reuptake inhibitor indicated for, among other things, panic disorder with or without agoraphobia and generalized anxiety disorder (GAD). Side effects include Suicidality, somnolence, headache, insomnia, nausea, asthenia, abnormal ejaculation, dry mouth, constipation, dizziness, diarrhea, decreased libido, sweating, decreased appetite, tremor.
http://www.pdr.net/drug-summary/paxil?druglabelid=215&id=1435 (last accessed Nov. 15, 2013.)

A Plaintiff need not be completely bedridden or reduced to a vegetative trance in front of a television in order to establish disability. *See Baumgarten v. Chater*, 75 F.3d 366, 369 (8th Cir. 1996). Activities such as light housework, light cooking, personal grooming, shopping, driving, social visits, and attending religious services do not necessarily equate to the ability to do competitive full time work. *See e.g. Draper v. Barnhart*, 425 F.3d 1127, 1131 (8th Cir. 2005) (household chores, laundry, grocery shopping, mowing, and other efforts to engage in ordinary life activities do not direct a finding that claimant in able to perform light work); *Baumgarten v. Chater*, 75 F.3d 366, 369 (8th Cir. 1996) (making her bed, preparing food, performing light housecleaning, grocery shopping, knitting, crocheting, and visiting friends not sufficient to discredit claimant's testimony of pain.) Rather, the ALJ must take into account the Plaintiff's ability "to perform the requisite acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world." *Thomas v. Sullivan*, 876 F.2d 666, 669 (8th Cir. 1989). Specific to fibromyalgia, the Eighth Circuit has held "the ability to engage in activities such as cooking, cleaning, and hobbies, does not constitute substantial evidence of the ability to engage in substantial gainful activity." *Brosnahan v. Barnhart*, 336 F.3d 671, 677 (8th Cir. 2003); *See Kelley v. Callahan*, 133 F.3d 583, 588-89 (8th Cir.1998).

Regarding the ALJ's treatment of the Plaintiff's ADL testimony, the undersigned notes two points of concern. First, at least one fact the ALJ used to discredit Plaintiff's subjective statement of pain was a clear misstatement of the Plaintiff's testimony. The Plaintiff testified that she could not clean her house due to her pain; that a friend came over twice a week to clean it for her. (Tr. 57-58.) The ALJ found that "[t]he claimant testified that she has a friend who comes to her house twice a week" to support a finding of mild limitation to Plaintiff's social functioning. (Tr. 23.) Given the subjective nature of fibromyalgia, the undersigned finds this mischaracterization to be troubling.

Second, the ALJ found that the Plaintiff had "a fairly active lifestyle" based on the fact that she could care for her personal grooming needs without assistance, "perform some household chores, drive

and shop."(Tr. 26.) This lifestyle was used to support a finding that the Plaintiff could perform the full range of light work. (Tr. 26.)  Plaintiff testified that she could use a microwave to cook food, that she could not perform housecleaning or yard work, and that she drives to grocery shop about once per month. (Tr. 57-58.)The use of personal grooming, microwaving, and a monthly trip to the grocery store to support a finding that a fibromyalgia patient can engage in substantial gainful activity contradicts Eighth Circuit precedent.

On remand, the ALJ is directed to further develop the record as to Plaintiff's activities of daily life in line with Eighth Circuit precedent and with attention to accuracy in characterizing facts.

## V.     Conclusion:

Accordingly, we conclude that the ALJ's decision is not supported by substantial evidence and should be reversed and remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

DATED this 15th day of  November, 2013.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE